UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVID MEECE,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT TRIEU, et al.,<br><br>Defendants. | CAUSE NO. 3:25-CV-194-JD-JEM |

OPINION AND ORDER

David Meece, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983. (ECF 2.) Pursuant to 28 U.S.C. § 1915A, the court must screen this pleading and dismiss it if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Meece is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Meece is an inmate at New Castle Correctional Facility. The events underlying the complaint occurred when he was an inmate at Indiana State Prison ("ISP"). He alleges that on or about March 8, 2024, he had a seizure in his cell. He claims Officers Oliva and Singleton (first names unknown) responded to the emergency, but they were

unprepared and failed to bring keys to open his cell door. He claims it took about five minutes for them to find the keys, during which time they were allegedly laughing and joking. They ultimately opened the door and additional staff arrived, including Sergeant Robert Trieu and Nurse Tiffany Turner. Meece was taken on a gurney to the medical unit, whereupon Nurse Turner determined he needed a dose of Narcan. Meece objected, stating that he did not need Narcan, but Sergeant Trieu allegedly grabbed him by the hair and held him so that Nurse Turner could administer the Narcan. He claims he later discovered "a large amount" of hair falling out from where Sergeant Trieu had grabbed him.

He subsequently filed a grievance about Sergeant Trieu's rough treatment, which ISP Executive Assistant Mark Newkirk and Grievance Specialist Joshua Wallen allegedly delayed in resolving. After Sergeant Trieu found out about the grievance, he allegedly told Meece to withdraw it, stating that he had only been trying to help him during the medical emergency. When Meece refused, Sergeant Trieu began to harass him by denying him recreation time on several occasions, refusing to get him a meal, and concocting a false disciplinary charge against him. Meece was ultimately found not guilty of the charge, but he claims the hearing officer, Lieutenant D. Draper, lied about the availability of video evidence during the hearing process.

Meece further claims that he wrote to prison officials to complain about these events, including Warden Ron Neal, Deputy Warden Dawn Buss, Administrative Services Manager Pam James, and the unnamed Supervisor of the Internal Affairs Department, but he received no response. He also filed several more grievances, which

he claims Grievance Specialists Wallen and Alicia Wildfang mishandled. Based on these events, he seeks damages from the above individuals.

Under the Eighth Amendment, inmates are entitled to adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). However, they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). Delay in providing necessary treatment can amount to deliberate indifference where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted).

Giving Meece the inferences to which he is entitled at this stage, he has plausibly alleged a serious medical need, in that he claims to have had a seizure. On the second prong, the failure of Officers Oliva and Singleton to bring keys to his cell—and their cavalier attitude during a medical emergency—might be unprofessional, but the court cannot conclude that it rises to the level of an Eighth Amendment violation. Such careless conduct falls more in the vein of negligence, and "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth

Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). It can be discerned that he was promptly seen and evaluated by medical staff once the officers opened the door, and he does not describe any injury he suffered as a result of the brief delay caused by their initial failure to bring the keys. *See Goodloe*, 947 F.3d at 1031. He will not be permitted to proceed against these officers.

As for Nurse Turner, inmates possess a Fourteenth Amendment due process liberty interest in "refusing forced medical treatment while incarcerated."[1] *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). This right also encompasses the right to informed consent, which means the inmate is entitled to "such information as a reasonable patient would deem necessary to make an informed decision." *Id.* The prisoner must allege that the defendant "acted with deliberate indifference to his right to refuse medical treatment." *Id.* "Neither negligence nor gross negligence is enough to support a substantive due process claim, which must be so egregious as to 'shock the conscience.'" *Id.* (citation omitted).

Meece claims he did not consent to or need the Narcan, but the court cannot plausibly infer conduct by Nurse Turner that would violate the Constitution. It can be discerned from Meece's account that he was discovered unconscious in his cell and that he lost consciousness again on the way to the medical unit. He does not mention having a prior record of a seizure-related illness that Nurse Turner would have known about. If

---

[1] It is not entirely clear from the complaint whether Meece is suing Nurse Turner. He states that he is suing nine defendants on the first page of the complaint, but then lists the names of eleven defendants and mentions additional individuals in the narrative section. Out of caution, the court has inferred a claim against Nurse Turner.

he did indeed need Narcan, it was necessary to act quickly in administering it. *See McFall v. Neal*, No. 3:21-CV-534 DRL-MGG, 2022 WL 225658, at *2 (N.D. Ind. Jan. 25, 2022) ("An opioid overdose requires prompt administration of Narcan."). Though he disagrees with Nurse Turner's split-second treatment decision, that is not enough to state either an Eighth Amendment claim or a Fourteenth Amendment due process claim against her. *Knight*, 942 F.3d at 342; *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). He will not be permitted to proceed against Nurse Turner.

He also claims Sergeant Trieu used excessive force against him. Under the Eighth Amendment, inmates cannot be subjected to excessive force. *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). The "core requirement" for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Id.* (citation and internal quotation marks omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* While *de minimis* uses of force are not actionable, "a prisoner need not suffer 'serious injury' in order to bring an Eighth Amendment claim." *Id.* at 890-91 (citation omitted).

Although it can be discerned that Sergeant Trieu was trying to assist Nurse Turner in administering the Narcan, which may have been a legitimate reason to use force, the complaint can be read to allege that he used more force than was necessary under the circumstances. Meece claims he was half-conscious and not resisting, and

Sergent Trieu used so much force that he lost clumps of hair after this incident. He will be permitted to proceed further on an excessive force claim against Sergeant Trieu.

He also alleges that Sergeant Trieu retaliated against him for filing a grievance. To state a claim under the First Amendment, a plaintiff must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citation and internal quotation marks omitted).

On the first prong, filing a non-frivolous grievance qualifies as protected First Amendment activity. *Holleman v. Zatecky*, 951 F.3d 873, 879 (7th Cir. 2020); *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). The court will presume that Meece's grievance about Sergeant Trieu's use of excessive force was non-frivolous in light of the inferences he must be given at this stage. On the second prong, he claims Sergeant Trieu refused to let him go to outdoor recreation on multiple occasions, forced him to go without a meal, and concocted a false disciplinary charge against him because of the grievance. Such treatment could "dissuade a reasonable person" in Meece's position "from engaging in future First Amendment activity."[2] *Perez*, 792 F.3d at 783. On the final prong, he claims there was a direct link between his First Amendment activity and the retaliatory acts, in

[2] He mentions missing a religious meal on one occasion because of Sergeant Trieu, which the court understands to be part of his retaliation claim. The court cannot plausibly infer that missing this one meal substantially burdened his religious practice. *See Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (*de minimis* burdens on religious practice are not actionable).

that Sergeant Trieu engaged in this conduct after telling him to withdraw his grievance and he refused. He has alleged enough to proceed further on a First Amendment retaliation claim.

Although unclear, he may be trying to assert a due process claim related to the disciplinary hearing process. Due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Meece acknowledges that he was ultimately found not guilty of the charge, and there is an insufficient basis to infer that he suffered an atypical and significant hardship because of it. He has not stated a plausible Fourteenth Amendment claim.

He also sues the Grievance Specialists for mishandling and delaying the resolution of his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011)*; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). The mere fact that these individuals processed grievances about the failings of other prison staff does not make them liable for a constitutional violation. *Daniel*, 833 F.3d at 736; *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). If Meece's exhaustion of administrative remedies becomes an issue at a later stage, he is free to argue that the grievance process was unavailable to him because the Grievance Specialists mishandled or delayed his grievances. *See Woodford v. Ngo*, 548

U.S. 81, 102 (2006). However, his allegations do not support an independent constitutional claim.

Finally, he sues a number of high-ranking officials. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable for damages merely because they oversee operations within the prison. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 595. Supervisors can be held liable for a constitutional violation committed by a subordinate, but only if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019).

As outlined above, the only cognizable constitutional claims Meece asserts relate to Sergeant Trieu's use of excessive force and retaliation. To the extent his claims against the high-ranking officials relate to his complaints about other misconduct by prison staff, they would fail for the same reasons. *See Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (supervisory liability under 42 U.S.C. § 1983 is derivative and requires an underlying constitutional violation by a subordinate). Regarding Sergeant Trieu, Meece claims he wrote to officials after the fact to complain about Sergeant Trieu's actions and they did not respond, but this alone does not give rise to a claim for damages. As the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. . . . . [The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's

> claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [a resolution of the problem]. That can't be right.

*Burks*, 555 F.3d at 595. He will not be permitted to proceed against the supervisory officials.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Sergeant Robert Trieu in his individual capacity for monetary damages for using excessive force against him under the Eighth Amendment on or about March 8, 2024;

(2) GRANTS the plaintiff leave to proceed against Sergeant Robert Trieu in his individual capacity for monetary damages for retaliating against him in violation of the First Amendment after he filed a grievance about the use-of-force incident;

(3) DISMISSES all other claims;

(4) DISMISSES Ron Neal, D. Buss, Mark Newkirk, Pam James, D. Draper, Supervisor, Joshua Wallen, Alicia Wildfang, Oliva, Singleton, and Nurse Tiffany Turner as defendants;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sergeant Robert Trieu at the Indiana Department of Correction and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(7) ORDERS Sergeant Robert Trieu to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 28, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT